**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE WEBSTAURANT STORE, LLC,<br><br>     Plaintiff,<br><br> v.<br><br>BUY SUPPLY, CORP. and ZORO TOOLS, INC.,<br><br>     Defendants. | Civil Action No. 1:25-cv-509<br><br>**COMPLAINT**<br><br>JURY DEMAND |

  Plaintiff The WEBstaurant Store, LLC ("WEB") by its undersigned attorneys Cowan, DeBaets, Abrahams & Sheppard LLP, hereby submits this complaint against defendants Buy Supply, Corp. ("Buy Supply") and Zoro Tools, Inc. ("Zoro" and together with Buy Supply, "Defendants"), as follows:

## INTRODUCTION

 1. This case arises out of the Defendants' infringement of nearly 1,600 copyrighted photographs owned by WEB.

 2. Both Buy Supply and Zoro are liable for violating WEB's exclusive rights of reproduction and distribution of its copyrighted works.

## JURISDICTION AND VENUE

 3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this is an action arising under the U.S. Copyright Act, 17 U.S.C. §§ 101, *et seq.*

 4. This Court has personal jurisdiction over Buy Supply because it is a New York corporation based in Brooklyn, New York.

1

5. This Court has personal jurisdiction over Zoro because Zoro transacted business with Buy Supply relating to this action in this District and therefore purposefully availed itself of the laws of New York and subjected itself to personal jurisdiction here.

6. Venue is proper under 28 U.S.C. § 1391(b) because (i) a substantial part of the events or omissions giving rise to this action occurred in this district; (ii) Defendant Zoro transacted business with Defendant Buy Supply specifically relating to this action in this District and therefore is subject to personal jurisdiction here; and (iii) Defendant Buy Supply has its principal places of business is in this District, and is therefore subject to personal jurisdiction here.

## THE PARTIES

7. WEB is a limited liability company organized under the laws of Pennsylvania with its principal place of business in Lancaster, Pennsylvania

8. WEB is an online e-commerce business in the food service industry and is one of the largest food service supply companies on the internet.

9. Buy Supply is a company organized under the laws of New York with its principal place of business in Brooklyn, New York.

10. Zoro is a company organized under the laws of Illinois with its principal place of business in Chicago, Illinois.

11. Zoro is an online supplier of tools, parts, business supplies, and industrial equipment, including for the restaurant and food services industries. Zoro is not a marketplace for third-party vendors but rather is an e-commerce business that merchandises products by partnering with distributors to provide supply chain and other logistical support services. When an order is placed on www.zoro.com (the "Zoro Website"), the order is received by one of Zoro's distribution

partners, who then purchases the product directly from the manufacturer to deliver the product to the end customer.

12. Buy Supply connects online buyers with suppliers of industrial, commercial, and facility supplies in addition to tactical, outdoor, and public safety products. Buy Supply is a client of Zoro and is one of Zoro's distribution partners as mentioned above.

## FACTUAL BACKGROUND

13. As part of its business, WEB employs 37 photographers, editors, reviewers, and other professionals to create high-quality images of its products for use on its website to illustrate, advertise, and/or promote the sale of WEB's products (the "WEB Image Collection").

14. The photographs in the WEB Image Collection are original and creative and require significant artistic contributions. WEB's photographers, editors, reviewers, and a special "styling team" engage in staging to ensure items are depicted in a pertinent setting, choose lighting and angles, select lenses, filters, and other camera settings, and use post-processing and editing tools to ensure that WEB's products are represented in a professional and visually appealing manner. WEB also utilizes photo brand standards to ensure the photographs in the WEB Image Collection meet the company's exacting standards in presenting its products to its customers and potential customers.

15. WEB may license the photographs in the WEB Image Collection to vendors and brand owners or customers who approach WEB to use its images on their websites. WEB's 2024 rate to license its images was $850 per image (increased to $1,000 for 2025), with a licensing minimum of five images. WEB does not allow third parties to use the WEB Images for free except in certain special circumstances that do not apply here.

16. WEB generally does not allow any suppliers, distributors, or third parties to use the photographs in the WEB Image Collection without consent and payment, as unauthorized use undermines the value in these copyrighted works and could harm WEB's reputation and damage its business, particularly if the images are used by another supplier attempting to compete with WEB or in association with lower quality goods.

17. In or around May of 2024, WEB discovered that Zoro was using many of its photographs on Zoro's own website without permission or license; to date, the number of images being used is 1,595 (the "WEB Images," a spreadsheet of which is attached hereto as Exhibit A).

18. Of the WEB Images, 1,087 (the "Class A Images") are registered with the Copyright Office and are eligible for either statutory or actual damages, and 508 (the "Class B Images") are registered with the Copyright Office and are only eligible for actual damages. In both cases, WEB is the lawful owner of the copyrights in the WEB Images as employer for hire and its registrations are valid and subsisting.

19. A chart of registration numbers for the Class A Images is attached hereto as Exhibit A.

20. A chart of registration numbers for the Class B Images is attached hereto as Exhibit B.

21. As noted above, Zoro is not a marketplace like Amazon where third parties can upload their own content or create their own listings. Clients like Buy Supply provide images to Zoro for Zoro to publish on its website to advertise product listings that its distribution partners offer for sale.

22. This is what Buy Supply did here. Buy Supply copied the WEB Images from WEB's website (or other locations on the internet) and distributed them—without WEB's authorization or license—to Zoro for publication on the Zoro Website to illustrate, advertise, and/or promote the sale of products Buy Supply had purchased from WEB and submitted for resale through Zoro.

23. Zoro then reproduced the WEB Images upon receipt from Buy Supply, presumably via downloading them, and then reproduced them again by uploading them to the Zoro Website. Once on the Zoro Website, Zoro publicly displayed the WEB Images. All of this was done without a license or other authorization from WEB.

24. The terms on the Zoro Website show that Zoro has sophisticated knowledge of intellectual property law and its applicability to online content (including its own content).

25. The Zoro Website contains terms and conditions which, *inter alia*, clearly prohibit the "download, display or use of [Zoro's content] for use in any publications, in public performances, on websites other than [Zoro's website] for any unpermitted commercial purpose, in connection with products or services that are not those of Zoro ], in any manner that is likely to cause confusion … dilutes the strength of [Zoro's] or its licensors' intellectual property, or that otherwise infringes [Zoro's] or its licensors' intellectual property rights (including through use of screen scraping, web harvesting, data extraction, or similar software or technologies.)"

26. These terms and conditions also state that "graphics, photographs, images, screen shots… and the compilation of the foregoing ('Zoro Content') is the property of Zoro and its licensors and is protected in the U.S. and internationally under trademark, copyright, and other intellectual property laws." Of course, the claim that all "Zoro Content" is owned by Zoro or its licensors is false given that over 2,500 images on the website belong to WEB and had not been licensed to Buy Supply or Zoro. These false representations in the Zoro Website's terms and conditions make the infringement all the more egregious.

27. While the WEB Images have purportedly been removed from the Zoro Website, neither Zoro nor Buy Supply has yet to compensate WEB for their infringements.

## COUNT I
### Direct Copyright Infringement
### Against Defendants Buy Supply and Zoro

28. Plaintiff repeats and realleges the allegations contained in the previous paragraphs as though fully set forth herein.

29. By the actions alleged above, Defendants infringed WEB's copyrights by reproducing, distributing, and publicly displaying the WEB Images without authorization in violation of 17 U.S.C. §§ 106(1), (3), (5) and § 501.

30. All the WEB Images are original works of authorship fixed in tangible mediums of expression (i.e., physical and/or digital photographs) and constitute copyrightable subject matter as pictorial works under the Copyright Act.

31. WEB has valid ownership of the WEB Images because it is the copyright holder as employer for hire of its photographers, editors, reviewers, and "styling team" who created the WEB Images, and has standing to sue for infringement of the WEB Images.

32. Defendants infringed WEB's copyrights in the WEB Images; specifically, without authorization or license and for commercial purposes:

   a. Buy Supply (1) reproduced the WEB Images from the WEB website or other locations on the Internet and (2) distributed the WEB Images by sending them (via email, file transfer, or other means of transmission) to Zoro.

   b. Zoro (1) reproduced the WEB Images by downloading them or otherwise copying them upon receipt from Buy Supply; (2) reproduced the WEB Images again by uploading them to the Zoro Website; and (3) publicly displayed the WEB Images by posting them on the Zoro Website.

33. The infringement of each of the WEB Images constitutes a separate and distinct violation of the Copyright Act.

34. The foregoing acts of infringement by the Defendants were willful, intentional, and purposeful, in disregard of and indifference to the rights of WEB.

35. Defendants' use of the WEB Images is not transformative in any way and usurps the licensing market WEB has established for the WEB Images by using these photographs for the exact same purpose as WEB uses them—illustrating WEB's products in an accurate, visually pleasing, and professional way in order to market, advertise, and ultimately sell the pictured products.

36. WEB is entitled to its actual damages and Defendants' profits for infringement of both the Class A and Class B Images, or at its election with respect to the Class A Images, statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of up to $150,000 with respect to each Class A Image infringed, or such other amounts as may be proper under 17 U.S.C. §504(c).

37. WEB is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505 with respect to the infringement of the Class A Images.

38. Defendants' conduct, described above, if continued or repeated without intervention by this Court, will cause WEB irreparable injury that cannot be fully compensated or measured in money. Pursuant to 17 U.S.C. § 502, WEB is entitled to a permanent injunction prohibiting further infringement of WEB's copyrights and exclusive rights under copyright.

## COUNT II
### Contributory Copyright Infringement
### Against Defendant Buy Supply

39. WEB repeats and realleges the allegations contained in the previous paragraphs as though fully set forth herein.

40. Buy Supply materially contributed to, induced, and/or caused Zoro's direct infringements detailed above and had knowledge of such infringing activity.

41. As part of its business relationship with Zoro, Buy Supply actively provided Zoro with the infringing copies of the WEB Images for purposes of Zoro then further copying them and posting them on Zoro's website for commercial purposes.

42.  Upon information and belief, Buy Supply had reason to know of the infringements of the WEB Images given that an employee unlawfully copied the WEB images in the scope of his or her employment.

43. Upon information and belief, the Buy Supply employee who, without authorization from WEB, knowingly copied the WEB Images and provided them to Zoro did so on Buy Supply's behalf, within the scope of his or her employment, and for the benefit of Buy Supply.

44. By the actions alleged above, Buy Supply has contributorily infringed the WEB Images in relation to Zoro's direct infringements referenced above.

45. Buy Supply's contributory infringement of each of the WEB Images constitutes a separate and distinct violation of the Copyright Act.

46. The foregoing acts of contributory infringement by Buy Supply were willful, intentional, and purposeful, in disregard of and indifference to the rights of WEB.

47. WEB's use of the WEB Images is not transformative in any way and usurps the licensing market WEB has established for the WEB Images by using these photographs for the exact same purpose as WEB uses them—illustrating WEB's products in an accurate, visually pleasing, and professional way in order to market, advertise, and ultimately sell the pictured products.

48. WEB is entitled to its actual damages and Buy Supply's profits for contributory infringement of both the Class A and Class B Images, or at its election with respect to the Class A

Images, statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of up to $150,000 with respect to each Class A Image contributorily infringed, or such other amounts as may be proper under 17 U.S.C. §504(c).

49. WEB is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505 with respect to the contributory infringement of the Class A Images.

50. Buy Supply's conduct, described above, if continued or repeated without intervention by this Court, will cause WEB irreparable injury that cannot be fully compensated or measured in money. Pursuant to 17 U.S.C. § 502, WEB is entitled to a permanent injunction prohibiting further contributory infringement of WEB's copyrights and exclusive rights under copyright.

## **PRAYER FOR RELIEF**

**WHEREFORE**, WEB prays for judgment against Defendants Buy Supply and Zoro as follows:

1. Finding Buy Supply liable for direct and contributory copyright infringement of the WEB Images;

2. Finding Zoro liable for direct copyright infringement of the WEB Images;

3. Awarding actual damages and Defendants' profits, in an amount to be determined at trial, for Defendants' respective direct and/or contributory infringements of the Class B Images;

4. Awarding, at WEB's election, actual damages and Defendants' profits or statutory damages, in an amount to be determined at trial, for Defendants' respective direct and/or contributory infringements of the Class A Images;

5. Awarding WEB its reasonable costs and attorney's fees; and

6. Issuing a permanent injunction requiring Defendants Buy Supply and Zoro, their respective agents, servants, employees, officers, successors, licensees, and assigns and all persons acting in

concert or participation with each or any of them, or for them, to (a) cease and desist from infringing the copyrights to any of the WEB Images in any manner, including without limitation, the reproduction, distribution, and public display of the WEB Images in Exhibit A to this Complaint; (b) remove or delete or cause to be removed or deleted any WEB Images that remain posted in any location (on the Internet, in social media, or otherwise) under the direct or indirect custody or control of Buy Supply or Zoro; and (c) destroy, delete, or otherwise dispose of any copies of the WEB Images (whether physical or electronic) in the direct or indirect possession, custody, or control of Buy Supply or Zoro.

7.  Granting such other and further relief as the Court may deem just and proper.

Dated: January 29, 2025

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

*/s/*Scott J. Sholder
Scott J. Sholder
60 Broad Street, 30th Floor
New York, New York 10004
Tel.: (212) 974-7474
Fax: (212) 974-8474
ssholder@cdas.com

*Attorneys for The WEBstaurant Store, LLC*